IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LARRY JOHNSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 07 C 2187 |
| | ) | |
| KARL SAVILLE, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

AMY J. ST. EVE, District Court Judge:

In his Amended Complaint, Plaintiff Larry Johnson brings a due process claim based on *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and a common law malicious prosecution claim against Defendant Officer Karl Saville, acting under his authority as an Illinois state police officer. Before the Court is Defendant's Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56. For the following reasons, the Court grants Defendant's motion.

**BACKGROUND**

**I.   Northern District of Illinois Local Rule 56.1**

When determining summary judgment motions, the Court derives the background facts from the parties' Local Rule 56.1 statements, which assist the Court by "organizing the evidence, identifying undisputed facts, and demonstrating precisely how each side propose[s] to prove a disputed fact with admissible evidence." *Bordelon v. Chicago Sch. Reform Bd. of Trs.*, 233 F.3d 524, 527 (7th Cir. 2000). Specifically, Local Rule 56.1(a)(3) requires the moving party to provide "a statement of material facts as to which the moving party contends there is no genuine

issue." *Ammons v. Aramark Uniform Servs., Inc.,* 368 F.3d 809, 817 (7th Cir. 2004); *see also Ciomber v. Cooperative Plus, Inc.,* 527 F.3d 635, 643 (7th Cir. 2008). Local Rule 56.1(b)(3)(B) requires the nonmoving party to admit or deny every factual statement proffered by the moving party and to concisely designate any material facts that establish a genuine dispute for trial. *See Schrott v. Bristol-Myers Squibb Co.,* 403 F.3d 940, 944 (7th Cir. 2005).

The purpose of Rule 56.1 statements is to identify the relevant evidence supporting the material facts, not to make factual or legal arguments. *Cady v. Sheahan,* 467 F.3d 1057, 1060 (7th Cir. 2006). The requirements for responses under Local Rule 56.1 are "not satisfied by evasive denials that do not fairly meet the substance of the material facts asserted." *Bordelon,* 233 F.3d at 528. A litigant's failure to respond to a Local Rule 56.1 statement results in the Court admitting the uncontroverted statement as true. *Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006). In addition, the Court may disregard statements and responses that do not properly cite to the record. *Cichon v. Exelon Generation Co., L.L.C.,* 401 F.3d 803, 809-10 (7th Cir. 2005). With these standards in mind, the Court turns to the relevant facts of this case.

## II. Relevant Facts

### A. Parties

From 1999-2004, the Illinois Department of Corrections ("IDOC") employed Johnson as a Youth Supervisor at the Illinois Youth Center ("IYC") located in Warrenville, Illinois. (R. 42-3, Def.'s Rule 56.1 Stmt. Facts ¶ 2.) Officer Saville is an Illinois State Police ("ISP") Officer. (*Id*. ¶ 3.) Johnson is suing Officer Saville in his individual capacity. (*Id*.)

### B. Initial Investigation

On September 5, 2003, through Barnett Gill, an employee at IYC Warrenville, IDOC

learned that Johnson may have had sexual relations with an IDOC inmate, referred to as A.M. (*Id.* ¶¶ 5, 9; 52-1, Pl.'s Rule 56.1 Stmt. Facts ¶¶ 1, 2, 3.) Thereafter, IDOC referred the matter to the ISP and on September 5, 2003, the ISP assigned Officer Saville to investigate the allegations of Johnson's criminal misconduct. (Def.'s Stmt. Facts ¶¶ 3, 6.)[1]

Although the IDOC referred the matter to the ISP, IDOC investigators were the first to interview A.M., who was no longer an IDOC inmate. (*Id.* ¶ 7.) A.M. denied having sexual relations with Johnson to the IDOC investigators. (*Id.* ¶ 9; Pl.'s Stmt. Facts ¶ 5.) Officer Saville was not present at the IDOC interview of A.M., nor did he know that A.M. denied having sexual contact with Johnson to the IDOC investigators. (Def.'s Stmt. Facts ¶ 10.) Morever, Officer Saville did not receive the IDOC's reports about the interview, nor did he speak with the IDOC investigators about their interview. (*Id.*) Meanwhile, at Johnson's criminal trial, A.M. testified that the IDOC investigators scared her, would not leave her alone, and told her that she would go back to the IDOC if she was not honest with them. (*Id.* ¶ 12, Pl.'s Stmt. Facts ¶¶ 6, 7, 16.)

### C. Officer Saville's Investigation

#### 1. King Telephone Call and Interview

Shortly after the ISP assigned Officer Saville to the Johnson matter, he contacted A.M.'s mother, Felicia King, to set up an interview regarding a complaint King had filed about Barnett Gill. (*Id.* ¶ 13; Pl.'s Stmt. Facts ¶¶ 1, 2.) During this telephone conversation, King told Officer

---

[1] Johnson filed a motion to strike portions of Defendant's Local Rule 56.1 Statement of Facts. The Court will consider Johnson's objections when setting forth the facts in the background section of this Memorandum, Opinion, and Order. Plaintiff, for example, moves to strike Defendant's Statement of Fact ¶ 6, but fails to give a sufficient explanation as to why the Court should strike this fact. Accordingly, the Court admits Defendant's Statement of Fact ¶ 6 as true. *Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006).

Saville that the IDOC investigators had interviewed A.M. and that A.M. was upset about the IDOC interview. (Def.'s Stmt. Facts ¶ 13.) King also informed Officer Saville that A.M. had been hospitalized for attempting to commit suicide. (*Id*.) Because A.M. was hospitalized, Officer Saville was unable to talk to her about the sexual conduct allegations at that time. (*Id*. ¶ 14.) Meanwhile, when Officer Saville learned that A.M. had attempted suicide a day or two after the IDOC officers interviewed her, Officer Saville reported this to a DuPage County Assistant State's Attorney. (*Id*. ¶ 15.)

Shortly thereafter, Officer Saville and his partner interviewed King about her complaint concerning Gill. (*Id.* ¶ 16.) King explained that Gill called her at home on September 4, 2003, and requested to speak to A.M. (*Id*.) King denied Gill's request to speak with her daughter and reported the incident to IDOC. (*Id.*) The ISP did not pursue King's complaint against Gill because it was an administrative concern that is normally handled by the IYC's Office of the Inspector General. (*Id*. ¶ 17.)

### 2. Victim Interview

On September 14, 2003, Officer Saville and his partner interviewed A.M. and documented the interview in an official Illinois State Police report. (*Id*. ¶ 18.) During the interview, A.M. admitted that she had consensual sexual intercourse with Johnson. (*Id*. ¶ 21.)[2] Also during the September 14, 2003 interview, A.M. stated that while she was an IDOC inmate,

---

[2] Johnson disputes Defendant's Statement of Fact ¶ 21 by citing A.M.'s trial testimony, which does not refute the fact that she admitted to Officer Saville at the September 13, 2003, interview that she had had consensual sexual intercourse with Johnson. The Court thus admits Defendant's Statement of Fact ¶ 21 as true. Moreover, A.M.'s trial testimony reveals that she had counsel representing her at the September 14, 2003, interview with Officer Saville. (Pl.'s Ex. 3, Dec. 28, 2005, Trial Tr., at 54-55.)

4

Johnson brought her prohibited items such as candy bars, cigarettes, and cocaine. (*Id*. ¶ 26.) A.M. also said that Johnson often stood outside of her cell door and watched her strip during his night shift. (*Id*. ¶ 27.) During Johnson's criminal trial, A.M. testified that the ISP investigators, including Officer Saville, did not threaten her and that they were "really nice." (*Id*. ¶ 29.)

### 3. Inmate Interviews

As part of his investigation, Officer Saville also interviewed A.M.'s cell mate on September 29, 2003. (*Id*. ¶ 33.) A.M.'s cell mate, M.V., signed a voluntary statement that A.M. told her that she had had sex with Johnson one evening. (*Id*.) M.V. also stated that she had observed Johnson ask A.M. to strip for him almost every night while he worked the night shift. (*Id*.) Furthermore, Officer Saville interviewed a former IYC inmate, T.M., in September 2003. (*Id.* ¶ 35.) T.M. signed a voluntary statement stating that A.M.'s cell was located next to hers and that Johnson would stand by A.M.'s cell door almost every night he worked. (*Id*.) According to T.M.'s voluntary statement, A.M. told T.M. that she had had sex with Johnson. (*Id*.)

### 4. Johnson Interview

On October 3, 2003, Officer Saville interviewed Johnson about the incident and documented the interview in an official ISP report. (*Id.* ¶ 36.) During the interview, Johnson denied that he had had sexual contact with A.M., but admitted that he talked to her through her locked cell door. (*Id.* ¶¶ 38, 39.) In the end, Johnson refused to sign a written voluntary statement regarding the information he had relayed to Officer Saville. (*Id.* ¶ 45.)

### 5. Gill Interview

On January 16, 2004, Officer Saville interviewed IYC Warrenville Youth Supervisor

Barnett Gill and documented the interview in an official ISP report. (*Id.* ¶ 46.) According to the report, A.M. had called Gill and told him that she had had sexual intercourse with Johnson while she was an inmate at IYC Warrenville. (*Id.* ¶ 47.) In September 2003, Gill wrote a five page incident report to the Warden at IYC Warrenville detailing his conversation with A.M. (*Id.* ¶ 48.) During Officer Saville's interview, Gill signed a voluntarily statement that in early September 2003, he had received a telephone call from A.M. complaining about Johnson. (*Id.* ¶ 49.)

### 6. Summary Brief

Sometime after his interview with Gill, Officer Saville prepared a summary brief for the prosecutor. (Pl.'s Stmt. Facts ¶¶ 35, 38.) In his brief, Officer Saville summarized A.M.'s voluntary statement. (Pl.'s Stmt. Facts, Ex. 11, Summary Brief, at 1-2.) Officer Saville also noted that ISP agents interviewed 31 current and former inmates and Youth Supervisors of IYC Warrenville during their investigation and that "23 of the interviews support allegations that Johnson attempted to cultivate an unprofessional relationship with youths at Warrenville," and that "[s]everal of the youths were aware of rumors that Johnson and [A.M.] had sex." (Pl.'s Ex. 11, at 2.) At the time he prepared his summary report, Officer Saville had read Gill's September 4, 2003, incident report and Gill's voluntary statement. (Pl.'s Stmt. Facts ¶ 37.)

### D. Grand Jury

After he completed his investigation, Officer Saville turned over his entire investigative file to the DuPage County State's Attorney's Office. (Def.'s Stmt. Facts ¶ 68.) On June 17, 2004, Officer Saville testified before a grand jury in DuPage County regarding his investigation of Johnson. (*Id.* ¶ 71.) Officer Saville informed the grand jury that Johnson denied having sex

with A.M. (*Id.* ¶ 72.) Officer Saville also testified about the statement in Gill's report that Johnson had had a sexual encounter with A.M. (Pl.'s Stmt. Facts ¶ 40.)

E. **Bench Trial and Present Lawsuit**

After a bench trial in DuPage County, Johnson was acquitted of any criminal wrongdoing. (Def.'s Stmt. Facts ¶ 85.) Johnson now brings this lawsuit against Officer Saville based on Officer Saville's inclusion of material falsehoods and his omission of material facts in his summary brief to the prosecutor. (R. 53-1, Pl.'s Resp. Brief, at 4-5.) In addition, Johnson alleges that Officer Saville's grand jury testimony included several of the false claims that he had reported in his summary brief. (*Id.* at 5-6.) Finally, Johnson sets forth a malicious prosecution claim under Illinois law. (*Id.* at 7-8.)

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P 56(c). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). In determining summary judgment motions, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 127 S.Ct. 1769, 1776 (2007). The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). After "a properly supported motion for summary judgment is

7

made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson v. Liberty Lobby*, 477 U.S. at 255 (quoting Fed R. Civ. P. 56(e)).

## ANALYSIS

### I. Grand Jury Testimony

Johnson co-mingles his *Brady* due process claim with his argument that while testifying in front of the grand jury, Officer Saville repeated some of the false statements that he included in his summary brief. Under well-established Seventh Circuit law, "police officers testifying before a grand jury are entitled to absolute immunity." *See Curtis v. Bembenek*, 48 F.3d 281, 284 (7th Cir. 1995). Indeed, in his motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), Officer Saville argued that Johnson's claim that he falsely testified in front of the grand jury must be dismissed because police officers testifying before a grand jury are entitled to absolute immunity. *See Cervantes v. Jones,* 188 F.3d 805, 809 (7th Cir. 1999), *rev'd on other grounds*, *Newsome v. McCabe*, 256 F.3d 747, 752 (7th Cir. 2001) (Absolute immunity protects police officers from lawsuits brought pursuant to 42 U.S.C. § 1983 for giving testimony before a grand jury).

In *Cervantes*, the Seventh Circuit discussed that an "exception to this wall of immunity for trial and pretrial testimony exists for a 'complaining witness.'" *Id*. at 809-10. As the Seventh Circuit explains, "[t]o qualify as a complaining witness (and thereby be disqualified from absolute immunity), a witness must play a sufficient role in initiating the prosecution." *Id.* at 810 (citation omitted). Stated differently, "merely providing false testimony to a grand jury is not enough, [r]ather, as we stated in *Curtis*, a complaining witness is one 'who actively instigated or encouraged the prosecution of the plaintiff.'" *Id.* (citing *Curtis,* 48 F.3d at 286.)

8

"Whether or not a witness was a complaining witness is a question of fact." *Finwall v. City of Chicago,* 490 F.Supp.2d 918, 926 (N.D. Ill. 2007) (citing *Cervantes,* 188 F.3d at 809-10); *see also Patterson v. Burge,* 328 F.Supp.2d 878, 891 (N.D. Ill. 2004) ("the determination of who qualifies as a complaining witness is highly fact-specific and best not resolved on a motion to dismiss.").

Based on the standard at the motion to dismiss stage, namely, that the Court must accept Johnson's factual allegations as true, *see Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007), the Court concluded that Johnson had sufficiently alleged that Officer Saville played a sufficient role in initiating Johnson's prosecution. Therefore, the Court concluded that Johnson had sufficiently alleged his claim by raising his right to relief beyond a speculative level. *See Bell Atlantic v. Twombly*, 127 S. Ct. 1955, 1959 (2007).

Here, Johnson maintains that because the Court concluded that Officer Saville played a sufficient role in initiating the prosecution at the motion to dismiss stage, Officer Saville cannot challenge this argument on summary judgment. As the Court clearly articulated in denying the motion to dismiss, whether a witness is a "complaining witness" is a question of fact and that under the federal notice pleading standards the Court must accept Johnson's allegations as true. *See Erickson*, 127 S. Ct. at 2200. At summary judgment, however, the standard differs significantly, namely, once Officer Saville has made a properly supported motion for summary judgment, Johnson must present specific facts showing that there is a genuine issue of material fact for trial. *See Anderson v. Liberty Lobby*, 477 U.S. at 255. As such, the Court's denial of Officer Saville's motion to dismiss does not preclude the Court from determining whether Officer Saville is entitled to absolute immunity at summary judgment. *See McMillan v.*

9

*Collection Prof'l Inc.,* 455 F.3d 754, 760 (7th Cir. 2006) (summary judgment standard is "a different and significantly more demanding standard than the Rule 12(b)(6) standard.").

In support of his argument that he was not a complaining witness, Officer Saville presents undisputed evidence that after he completed his investigation, he turned over his entire investigative file to the DuPage County State's Attorney's Office. (Def.'s Stmt. Facts ¶ 68.) Moreover, according to the prosecutor, Officer Saville never pressured him to pursue criminal charges against Johnson. (*Id*. ¶ 83.)[3] As the *Cervantes* decision teaches, "a complaining witness is one 'who actively instigated or encouraged the prosecution of the plaintiff.'" *Cervantes,* 188 F.3d at 810 (quoting *Curtis,* 48 F.3d at 286). Here, Officer Saville has presented evidence supporting the conclusion that he did not play a significant role in initiating or encouraging Johnson's prosecution.

Because Officer Saville has presented "a properly supported motion for summary judgment," Johnson "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby*, 477 U.S. at 255 (citing Fed.R.Civ.P. 56(e)). Viewing the facts in a light most favorable to Johnson, he fails to present any facts creating a genuine issue for trial that Officer Saville actively initiated or encouraged his prosecution. *See Cervantes,* 188 F.3d at 810. Because there are no material facts for trial, Officer Saville has established that he is protected by absolute immunity as to Johnson's claim that he gave false testimony at the grand jury

---

[3] Johnson's response to Defendant's Statement of Facts ¶ 83, as articulated in his motion to strike, "do[es] not fairly meet the substance of the material facts asserted." *Bordelon v. Chicago Sch. Reform Bd. of Trs.,* 233 F.3d 524, 528 (7th Cir. 2000). Accordingly, the Court admits Defendant's statement as true. *See Raymond v. Ameritech Corp.,* 442 F.3d 600, 608 (7th Cir. 2006); *see also Brengettcy v. Horton,* 423 F.3d 674, 681 (7th Cir. 2005) ("failure to respond by the nonmovant as mandated by the local rules results in an admission").

proceedings. This does not end the Court's inquiry, however, because Johnson's due process claim is based on Officer Saville allegedly withholding exculpatory evidence and making false statements and omissions in his summary brief to the prosecutor. *See Ienco v. City of Chicago,* 286 F.3d 994, 1000 (7th Cir. 2002) (withholding exculpatory information is not protected by absolute immunity).

**II.     Due Process Claim**

In his Amended Complaint, Johnson brings a due process claim alleging that Officer Saville made false statements and omissions in his summary brief to the prosecutor in violation of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). In *Brady,* "the Supreme Court held that the right to due process and a fair trial requires that the prosecutor turn over to the defense all potentially exculpatory evidence. That obligation extends to police officers, insofar as they must turn over potentially exculpatory evidence when they turn over investigative files to the prosecution." *Harris v. Kuba,* 486 F.3d 1010, 1014 (7th Cir. 2007). As the Seventh Circuit recently articulated, a "*Brady* violation can be broken down into three basic elements: (1) the evidence at issue is favorable to the accused, either being exculpatory or impeaching; (2) the evidence must have been suppressed by the government, either willfully or inadvertently; and (3) there is a reasonable probability that prejudice ensued – in other words, "materiality." *Carvajal v. Dominguez,* ___ F.3d ___, 2008 WL 4095483, at *3 (7th Cir. Sept. 5, 2008); *see also Ienco v. Angarone,* 429 F.3d 680, 683 (7th Cir. 2005). "Evidence is suppressed for *Brady* purposes when (1) the prosecution failed to disclose the evidence in time for the defendant to make use of it, and (2) the evidence was not otherwise available to the defendant through the exercise of reasonable diligence." *Ienco,* 429 F.3d at 683.

Johnson first argues that Officer Saville's summary brief of his investigation included the false assertion that during Officer Saville's October 2, 2003, interview of Johnson, Johnson admitted to watching A.M. strip through the window of her cell door. Assuming that Officer Saville's assertion is false – any such claim does not amount to a *Brady* violation because Johnson knew what he said during his interview with Officer Saville, and thus Officer Saville's duty to disclose under *Brady* "falls out." *See Gauger v. Hendle,* 349 F.3d 354, 360 (7th Cir. 2003), *rev'd on other grounds*, *Wallace v. City of Chicago,* 440 F.3d 421 (7th Cir. 2006). In other words, because Johnson knew what happened during his interview with Officer Saville, information concerning the interview was not suppressed in the first instance. *See Sornberger v. City of Knoxville, Ill.,* 434 F.3d 1006, 1029 (7th Cir. 2006); *see also Harris,* 486 F.3d at 1017. Therefore, no *Brady* violation occurred under these circumstances. *See Ienco,* 429 F.3d at 683 (evidence available to defendant not "suppressed" for *Brady* purposes).

Next, Johnson maintains that Officer Saville's statement in his summary brief to the prosecutor that A.M. was assigned to cleaning detail and that Johnson was her supervisor on the evening of the sexual encounter was a false statement because evidence in the record indicates that Barnett Gill was A.M.'s supervisor that night. Assuming Johnson was not A.M.'s supervisor on the night of the incident, this information was in Johnson's possession, and thus it cannot be "suppressed" as required for a *Brady* violation. *See Ienco,* 429 F.3d at 683 (evidence is not suppressed if "available to the defendant through the exercise of reasonable diligence") Put differently, Johnson knew that he did not supervise A.M. on the night of the incident and could have challenged this "false" information at trial. *See Harris,* 486 F.3d at 1017.

Finally, Johnson maintains that Officer Saville's summary brief fails to mention how the

12

IDOC investigators harassed, threatened, and intimidated A.M. Johnson, however, admits that Officer Saville was not present during the IDOC investigators' interview of A.M., that Officer Saville did not receive IDOC's reports of the A.M. interview, and that Officer Saville did not speak to the IDOC investigators about the A.M. interview. (R. 52-1, Pl.'s Resp. Rule 56.1 Stmt. ¶ 10.) In addition, Johnson fails to present evidence that Officer Saville otherwise knew about the IDOC investigators' alleged threats and intimidation. Meanwhile, as discussed in *Carvajal*, "[i]t is already established law that *Brady* does not extend so far as to provide relief in a situation where 'a police officer makes a false statement to a prosecutor.'" *Id.* at *4 (quoting *Harris*, 486 F.3d at 1017); *see also Sornberger,* 434 F.3d at 1029. Thus, Officer Saville's omission of the IDOC investigators' harassment in his summary brief prepared for the prosecutor cannot serve as the basis for Johnson's *Brady* claim. *See Sornberger,* 434 F.3d at 1029 ("*Brady* rights run to the criminal defendant, not to the prosecution.").[4]

Viewing the facts and all reasonable inferences in a light most favorable to Johnson, he has failed to establish a material fact for trial regarding his *Brady* due process claim and the Court grants Officer Saville's summary judgment motion as to this claim. Because Johnson failed to established that Officer Saville violated his constitutional rights, the Court need not address Officer Saville's qualified immunity arguments. *See Williams v. Rodriguez,* 509 F.3d 392, 398 (7th Cir. 2007).

---

[4] Although Johnson pointed out other false statements and omissions in his Interrogatory Answers, he has failed to make any arguments concerning these statements in his legal brief to the Court. (*See* Def.'s Ex. I, Pl.'s Interrog. Answers.) Accordingly, Johnson has abandoned any such arguments. *See Steen v. Myers,* 486 F.3d 1017, 1020 (7th Cir. 2007) (absence of discussion in briefs amounts to abandonment of claim).

**III.     Malicious Prosecution**

Johnson also brings a state law tort claim of malicious prosecution.  To establish a claim for malicious prosecution under Illinois law, Johnson must show:  (1) Officer Saville commenced a criminal or civil judicial proceeding against him; (2) the judicial proceeding was terminated in his favor; (3) there was no probable cause to arrest him; (4) malice; and (5) damages.  *See Logan v. Caterpillar, Inc.,* 246 F.3d 912, 921-22 (7th Cir. 2001) (citing *Swick v. Liautaud*, 169 Ill.2d 504, 512, 215 Ill.Dec. 98, 662 N.E.2d 1238 (Ill. 1996)).  The failure to establish any one of these elements precludes recovery for malicious prosecution.  *See Logan*, 246 F.3d at 922; *Swick*, 169 Ill.2d at 512.

Here, Officer Saville has presented evidence that there was probable cause to arrest Johnson, namely, that based on the facts and circumstances within Officer Saville's knowledge, Johnson had committed the offense of criminal sexual assault.  *See Wheeler v. Lawson,* 539 F.3d 629, 634 (7th Cir. 2008).  On the other hand, Johnson has failed to argue – let alone establish – that there was ***no*** probable cause to arrest him, and thus has failed "to make a showing sufficient to establish the existence of an element essential to [his] case, and on which [he] will bear the burden of proof at trial."  *Celotex,* 477 U.S. at 322.  Because Johnson has not establish this element of his malicious prosecution claim, the Court grants Officer Saville's summary judgment motion on this claim.

## CONCLUSION

For the foregoing reasons, the Court grants Defendant's Motion for Summary Judgment. The Court denies Plaintiff's motion to strike as moot.

Dated: October 17, 2008

                        **ENTERED**

                        _____
                        **AMY J. ST. EVE**
                        **United States District Court Judge**